RENDERED: JULY 10, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0217-DG

DONALD G. SHELTON, ACTING IN
HIS CAPACITY AS TRUSTEE OF
THE DONALD B. SHELTON TRUST
U/A/D APRIL 24, 2012                                          APPELLANT


                   ON REVIEW FROM FAYETTE CIRCUIT COURT
v.                 HONORABLE JULIE M. GOODMAN, JUDGE
                   ACTION NO. 24-XX-00007


JONATHAN P. SHELTON, A
REMAINDER BENEFICIARY OF
THE DONALD B. SHELTON TRUST
U/A/D APRIL 24, 2012                                          APPELLEE


                              OPINION
                             AFFIRMING

                          ** ** ** ** **

BEFORE: ACREE, EASTON, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: This appeal is before the Court upon discretionary review of a

January 21, 2025, Order of Fayette Circuit Court reversing and remanding the

Findings of Fact and Conclusions of Law rendered by the Fayette District Court on

January 12, 2024, concerning the administration of the Donald B. Shelton Trust.[1]

For the reasons stated, we affirm.

The Donald B. Shelton Trust (Trust) was created on April 24, 2012. Under its terms, the Trust was established to provide for the needs of Donald B. Shelton (Mr. Shelton) during his lifetime.[2] Donald G. Shelton and Jonathan P. Shelton were Mr. Shelton's children, and both Donald and Jonathan, as well as Donald's son, were to receive certain real property held by the Trust upon the death of Mr. Shelton per the terms of the Trust. Donald was the trustee of the Trust. By January of 2019, Mr. Shelton was admitted as a patient at a long-term health facility specializing in the treatment of patients with dementia at a cost of approximately $6,600 per month.

The Trust possessed two income-producing real properties – a Chili's restaurant and a commercial office building, both located on Richmond Road in Lexington, Kentucky. Additionally, the Trust included a residential house (Mr. Shelton's residence) also located in Lexington, Kentucky. As trustee, Donald was empowered to sell any property held by the Trust to provide for the needs of Mr. Shelton. Upon the death of Mr. Shelton, the Trust directed that the Chili's property

---

[1] The motion for discretionary review was filed by Donald G. Shelton, acting in his capacity as trustee of the Donald B. Shelton Trust U/A/D April 24, 2012. This Court granted the motion by Order entered May 27, 2025.

[2] The underlying facts and procedural facts are voluminous. We will only recite those facts necessary to resolution of this appeal.

would pass in fee simple to Jonathan, and the commercial office building and residence would pass in fee simple to Donald and his son. Mr. Shelton passed away on October 7, 2021. Pursuant to its terms, the Trust terminated.

In 2019, Donald began exploring the possible sale of the Trust's assets. On March 15, 2021, Donald sold the Chili's property for $1,400,000. Utilizing a portion of the sale proceeds, Donald purchased three rental properties in Florida for $778,500 and invested $250,000 in a Delaware statutory trust vehicle. Donald also utilized proceeds from the sale to pay property taxes on the residence, to pay overdue mortgage indebtedness on the residence, and to make repairs to the residence and the office building. Thereafter, on August 18, 2021, Donald sold the office building for $2,050,000. Donald invested $1,871,461.49 of these sale proceeds into a Delaware statutory trust vehicle.

The Trust had been registered in the Fayette District Court on February 13, 2019 (Action No. 19-P-00231). Kentucky Revised Statutes (KRS) 386B.2-050. On September 30, 2021, Jonathan filed a motion to, *inter alios*, either remove Donald as trustee or to appoint Jonathan as co-trustee. In the motion, Jonathan alleged that Donald breached his duties as trustee to administer the Trust impartially and as a prudent investor. Additionally, Jonathan maintained that Donald breached the duty of loyalty to administer the Trust for the sole benefit of the beneficiaries, breached the duty to impartially administer the Trust without

-3-

favoritism between the beneficiaries, and breached the duty to share financial information concerning the Trust with the beneficiaries. Jonathan asserted that Donald's decision to sell the Chili's property was motivated not by financial prudence but by Donald's desire to enhance the value of his eventual inheritance (office building and residence) to the detriment of Jonathan's inheritance. Additionally, Jonathan claimed that Donald failed to disclose information about the Trust at different times when requested by Jonathan.

On October 27, 2021, Donald filed a response to Jonathan's motion in district court. In the response, Donald pointed out that Mr. Shelton had died on October 7, 2021. As a result, the process for terminating the Trust had commenced, and his remaining duties were to provide an accounting and to distribute the remaining assets of the Trust to Jonathan, Donald, and Donald's son under the Trust's terms. Additionally, Donald argued that he carried out his duties as trustee in good faith and in compliance with the terms of the Trust and applicable law. Donald alleged that his decision to sell certain real properties of the Trust was permitted by the terms of the Trust, and these sales were necessary and prudent to meet the ongoing needs of Mr. Shelton. As to his duty to inform beneficiaries of Trust affairs, Donald maintained that he produced more than 1,700 pages of financial documents for Jonathan. Donald also claimed that he had

administered the Trust impartially and pointed out that he sold both the Chili's property and the office building to provide for the needs of Mr. Shelton.

By order entered November 3, 2021, the district court concluded the sale of the Chili's property did not constitute an ademption of the devise of property to Jonathan under Article 5.1(A) of the Trust. Thus, the district court held that Jonathan was entitled to receive the value of such devise. Additionally, the district court denied Jonathan's motion to remove Donald as trustee. Yet, the district court ordered that Donald could not undertake any trust transaction with a value over $1,000 without the prior approval of Jonathan or of the court.

Thereafter, in December of 2021, Donald served the Donald B. Shelton Trust Notice and Report of the Trustee Pursuant to KRS 386B.8-180 (Report) upon Jonathan. In the Report, Donald provided an accounting of Trust's assets and liabilities from October 1, 2018, through November 31, 2021. Donald also stated that although he was appointed Trustee in 2012, Mr. Shelton actually administrated the Trust until his mental incapacity in 2018, whereupon Donald and Jonathan were appointed Mr. Shelton's guardians by the district court. When Donald began administrating the Trust in 2018, he maintained that the Trust's financial situation was perilous. Donald asserted that the office building was in a state of disrepair, in danger of being condemned, and some tenants were not timely submitting rental payments. Donald also stated that the residence had been

mortgaged by Mr. Shelton and was in need of substantial repairs. And according to Donald, he hired a consultant who advised that it was unlikely that the tenant would renew the Chili's property's lease because of depressed sales. Donald pointed out that the tenant had sold its leasehold interest in Chili's back to Brinkers International, which was apparently Chili's parent company. Due to Mr. Shelton's deteriorating mental condition, he was admitted as a patient in an assisted care facility in 2019, at a cost of approximately $6,600 per month. The Report stated that the income produced by the Trust was insufficient to meet Mr. Shelton's needs and to make necessary repairs to Trust property. Donald explained in the Report that for these reasons, he listed the Chili's property for sale and ultimately sold same for $1.4 million on March 15, 2021; thereafter, Donald sold the office building for $2.05 million on August 18, 2021. Donald stated that he reinvested the sale proceeds with the exception of $330,000 in cash. Donald proposed that each beneficiary should inherit the specific real property given to each per the terms of the Trust except where such property was sold. Where such real property had been sold, Donald proposed that the beneficiary receive the Trust assets directly purchased with funds from the sale of that beneficiary's devised real property.

On January 17, 2022, Jonathan filed exceptions and objections to the Report. Jonathan claimed that in the Report, Donald failed to provide an itemized

-6-

accounting of the Trust's income and liabilities for the previous five years. Additionally, Jonathan maintained that certain expenses were neither reasonable nor prudent. Jonathan also argued that Donald's distribution plan was inconsistent with the estate plan set forth in the Trust. Per the November 3, 2021, order, Jonathan asserted that he was at least entitled to $1.4 million in distribution from the Trust, as the Chili's property was sold for same. However, Jonathan believed that the sale price ($1.4 million) was not a fair price for the Chili's property and requested the court to appoint an expert to determine the proper value of the Chili's property when it was sold as permitted per Kentucky Rules of Evidence 706. Jonathan alleged that Donald breached his fiduciary duty and sold the Chili's Property below a fair value for the property. Additionally, Jonathan asserted that Donald utilized $94,140.40 from the sale of the Chili's property to cure the default on the mortgage and also utilized $35,000 to pay overdue property taxes on the residence. Jonathan maintained that Donald breached several duties as trustee – failed to keep him reasonably informed concerning Trust transactions, failed to administer the Trust prudently, failed to act in good faith and in the interests of the beneficiaries, failed to administer the Trust impartially, and failed to loyally administer the Trust. As to the duty of loyalty, Jonathan produced emails wherein Donald expressed animosity toward Jonathan and his intention to secretly sell the Chili's property. Jonathan also maintained that Donald breached the duty of

loyalty by personally benefiting from the sale of the Chili's property by using some of the proceeds upon the office building and residence, being property Donald was to inherit.

The district court conducted a two-day evidentiary hearing. Following the hearing, each party submitted briefs. Ultimately, by Findings of Fact and Conclusions of Law, the district court determined that Donald, as trustee, was empowered to sell real property of the Trust to provide for the needs of Mr. Shelton. The district court found that Donald acted prudently in selling the Chili's Property and that the Chili's Property was sold for a fair and reasonable price. The district court also found that Donald did not breach the duties of loyalty, impartiality, or prudence. The district court further approved Donald's plan of distribution filed on August 29, 2022. As a result, the district court ordered Donald, as trustee, to:

> (i) establish Trust shares for each of the Remainder Beneficiaries, with assets equal in value to $1,400,000.00, being the sales price of the Chili's, allocated to Jonathan's Trust share, and assets equal in value to the Residence (net sales proceeds) and the Office Building, being $2,252,206.10, to be divided between Donald G. Shelton and Thomas Ryan Shelton (representing shares for each of Donald G. Shelton and Thomas Ryan Shelton of $1,126,103.05); (ii) adjust the shares of each Remainder Beneficiary to reflect amounts already received from the Trust, (iii) adjust the share of Donald G. Shelton to reflect the $8,000.00 he erroneously received as an over-repayment of loans he made to the Trust, (iv) allocate Trust assets in-kind to

fund the Trust shares, (v) allocate any remaining Trust assets over and above the value of the shares of the Remainder Beneficiaries equally to each share of the Remainder Beneficiaries (or 1/3 each), (vi) retain the sum of $25,000.00 in cash for use in payment of final costs and expenses in terminating the Trust, (vii) cease making the monthly distributions to the Remainder Beneficiaries during the period of terminating the Trust, (viii) cause any residual balance of the holdback amount to be distributed in equal shares to the three Remainder Beneficiaries of the Trust once the final costs and expenses of terminating the Trust are paid, and (ix) take all steps necessary to implement the proposed plan of distribution.

District Court Findings of Fact and Conclusions of Law at 4-5.

Jonathan then undertook a direct appeal (Action No. 24-XX-00007) to the Fayette Circuit Court on April 26, 2024. By order entered January 21, 2025, the circuit court reversed and remanded the district court's Findings of Fact and Conclusions of Law. Therein, the circuit court concluded that the district court failed to make adequate findings of fact, and instead, the district court simply made conclusory statements without any supporting factual foundation. The circuit court pointed out that the district court merely adopted findings of fact and conclusions of law submitted by Donald without change. Additionally, the circuit court determined that the district court had erred by making conclusory statements rather than specific findings of fact concerning Donald's alleged breach of fiduciary duties. The circuit court concluded that the district court's finding that Donald breached no fiduciary duty was clearly erroneous. Specifically, the circuit court

-9-

held that Jonathan "convincingly established" that it was not necessary to sell any real property of the Trust to provide for Mr. Shelton's care. Order at 18. The circuit court recited that the rent from the Chili's Property was nearly enough to meet Mr. Shelton's monthly needs and found that if real property needed to be sold, the Office Building should have been initially sold before the Chili's Property. According to the circuit court, "[g]iven the totality of the facts presented at the evidentiary hearing, there was nothing which would induce conviction in the minds of reasonable men that DG [Donald] acted prudently in selling the Chili's before the Office Building, or in selling the Chili's property at all." Order at 19. And as to Donald's duties of loyalty and impartiality, the circuit court found "[g]iven the contemporaneous emails [from Donald] to Gerry Calvert, his attorney, and Rob Gabbert, his real estate agent (reproduced above in the Court's Findings of Fact) there is no reasonable conclusion other than that DG's [Donald's] motivation for selling the Chili's was to spite his brother, not to diversify the Trust's assets." Order at 20. Additionally, the circuit court concluded that Donald breached his duty to administer the Trust from the time of its creation until 2018, as Donald permitted Mr. Shelton to administer the Trust during this period to the financial detriment of the Trust. The circuit court concluded that Jonathan submitted adequate proof of damages through the testimony of his expert witness,

-10-

Jason Taylor. Consequently, the circuit court reversed and remanded for the district court to determine the amount of damages suffered by Jonathan.

Donald then filed a motion for discretionary review in the Court of Appeals, and by Order entered May 27, 2025, the Court granted the motion. Thus, our review follows.

## STANDARD OF REVIEW

Like the circuit court, we review the decision of the district court pursuant to Kentucky Rules of Civil Procedure (CR) 52.01. Under CR 52.01, findings of fact will not be disturbed unless clearly erroneous, and a finding of fact is clearly erroneous if not supported by substantial evidence of a probative value. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Substantial evidence is evidence that "has sufficient probative value to induce conviction in the minds of reasonable men." *Ky. State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972). Our review of issues of law is *de novo*. *J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 158 (Ky. App. 2024). And we, as an appellate court, may affirm for any reason supported by the record. *See Thomas v. University Medical Center, Inc.*, 620 S.W.3d 576, 589 (Ky. 2020); *J.P.T.*, 689 S.W.3d at 158.

-11-

## ISSUES ON APPEAL

Donald contends that the circuit court committed error by reversing the Findings of Fact and Conclusions of Law rendered by the district court. Donald initially claims that the circuit court overstepped permissible appellate review. In particular, Donald alleges that the circuit court improperly weighed the evidence and made its own findings of fact. Additionally, Donald asserts that the district court set forth sufficient findings of fact that were supported by substantial evidence of a probative value. Donald maintains that he acted in a prudent manner by selling the Chili's property, by repairing the residence, by making overdue mortgage and tax payments upon the residence, and by selling the office building. Donald further argues that his decisions were made for the primary benefit of Mr. Shelton per the terms of the Trust and that he neither breached the duty of loyalty nor duty of good faith. Donald further asserts that he timely informed Jonathan of Trust business. Donald argues that Jonathan failed to prove he suffered any damage as the sale of the Chili's property was for a fair price. Donald urges this Court to reverse the order of the circuit court and affirm the decision of the district court.

Based on our review, we agree with the circuit court that the district court's findings of fact were clearly erroneous as concerns Donald's breach of fiduciary duty to Jonathan. There exists substantial evidence that Donald, as

trustee, breached the duty of loyalty to Jonathan by selling the Chili's property, and Jonathan is entitled to damages for the sale of said property.

## DUTY OF LOYALTY

The Uniform Trust Code is set forth in KRS Chapter 386B. KRS 386B.11-050. Therein, KRS 386B.8-020(1) imposes a duty of loyalty upon a trustee to "administer the trust solely in the interests of the beneficiaries." Such duty requires the trustee to act in good faith with absolute candor and undivided loyalty to the beneficiaries. 76 AM. JUR. 2D *Trusts* § 351 (2026). Therefore, the trustee must administer the trust for sole benefit of the beneficiaries. As a result, "[t]he law does not permit a person in a fiduciary capacity to handle the beneficiary's property so as to further his own ends." *Hutchings v. Louisville Trust Co.*, 276 S.W.2d 461, 464 (Ky. 1954). Simply stated, a trustee cannot sell trust property and benefit therefrom. "[I]t will be difficult if not impossible for the same person [trustee] to act fairly in two capacities and on behalf of two interests in the same transaction." Susan Gary, George Gleason Bogert, George Taylor Bogert, and Amy Morris Hess, *Bogert's The Law of Trusts and Trustees*, § 543 (May Update 2025). In other words, a trustee may not favor his individual interest over that of the beneficiaries of the Trust. Further, it is recognized that "[a] trustee engages in a divided loyalty transaction if the trustee acts in connection with trust property both on behalf of the trust and for the trustee's personal interests. The

-13-

conflict of interest between the trustee's fiduciary and personal interests means that the trustee is not acting *solely* in the interests of the trust beneficiaries. This type of conflict is sometimes called self-dealing." Susan Gary, George Gleason Bogert, George Taylor Bogert, and Amy Morris Hess, *Bogert's The Law of Trusts and Trustees*, § 543 (May Update 2025) (footnotes omitted). In such situations, "[i]t is immaterial that the trustee acts in good faith in purchasing the property for the trust, and that he pays a fair consideration." *First State Bank v. Catron*, 105 S.W.2d 162, 166 (Ky. 1937). Rather, under KRS 386B.8-020(2), a sale or transaction involving trust property that is "affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless":

> (a) The transaction was authorized by the terms of the trust;
>
> (b) The transaction was approved by the court;
>
> (c) The beneficiary did not commence a judicial proceeding within the time allowed by KRS 386B.10-050;
>
> (d) The beneficiary consented to the trustee's conduct, ratified the transaction, or released the trustee in compliance with KRS 386B.10-090; or
>
> (e) The transaction involves a contract entered into or claim acquired by the trustee before the person became or contemplated becoming trustee.

KRS 386B.8-020(2).

-14-

In this case, the terms of the Trust clearly named Donald as trustee of the Trust, and Donald was also devised the office building and the residence upon the death of Mr. Shelton. The terms of the Trust also clearly provided that Jonathan was devised the Chili's property upon the death of Mr. Shelton. Additionally, the Trust was created to provide for the needs of Mr. Shelton, and to that end, the trustee was empowered to sell Trust property. Therefore, under the terms of the Trust, Donald served as trustee with the power to sell any Trust property, and concomitantly Donald received a remainder interest in Trust property, that being the office building and residence. When Donald sold the Chili's property and used some of its proceeds to pay taxes, make mortgage payments, and carry out repairs upon the residence and office building, Donald effectively increased the value of his remainder interest in the Trust to Jonathan's detriment. By so doing, it is clear that a conflict of interest arose between Donald's position as trustee and his position as a remainder beneficiary. As trustee, Donald is generally prohibited from individually benefiting from a sale of Trust assets, and he owed the duty of loyalty and impartiality to Jonathan as a beneficiary. As noted, where a trustee's personal interest is affected by a transaction involving trust property, the beneficiary may void the transaction unless an exception under KRS 386B.8-020(2) is applicable. As Donald

individually benefited from the sale of the Chili's property, we must examine whether the exceptions to KRS 386B.8-020(2) are applicable.

Considering the exceptions set forth in KRS 386B.8-020(2), the record is clear that Donald did not obtain court approval or Jonathan's approval to sell the Chili's property. The parties have not cited to a term of the Trust that authorized Donald to increase the value of his remainder interest by selling the Chili's property or any asset of the Trust, and we are unaware of any such term. Since the sale of the Chili's property was not necessary to meet the needs of Mr. Shelton, the sale was not authorized by the terms of the Trust. Additionally, there is no allegation that the proceeding was untimely, or the transaction involved a contract entered into before Donald became trustee. Based upon these undisputed facts, we conclude that Donald failed to comply with KRS 386B.8-020(1) and breached his duty of loyalty owed to Jonathan as to the sale of the Chili's property. The district court's conclusion to the contrary was properly reversed by the circuit court. Under KRS 386B.8-020, Jonathan is generally entitled to "void" the sale of the Chili's property; however, as the Chili's property was sold to a good faith purchaser for value, Jonathan is instead entitled to damages. *See Mobile Companies, Inc. v. American States Ins., Co.*, 823 S.W.2d 934, 936 (Ky. App. 1991); *see also* 76 AM. JUR. 2D *Trusts* § 291 (2026).

## DAMAGES

KRS 386B.10-020 sets forth the damages recoverable by a beneficiary

for a breach of a fiduciary duty by the trustee:

(1) A trustee who commits a breach of trust is liable to
the beneficiaries affected for the greater of:

(a) The amount required to restore the value of the trust
property and trust distributions to what they would
have been had the breach not occurred; or

(b) The profit the trustee made by reason of the breach.

Where a trustee breaches the duty of loyalty, the beneficiary is entitled

to recover the greater of the amount equal to value of trust property and

distributions absent the breach or the amount of profit gained by the trustee.  KRS

386B.10-020(1).  Upon remand, the district court shall conduct a hearing and

determine the amount of damages under KRS 386B.10-020(1) to award Jonathan

for the improper sale of the Chili's property.

## ATTORNEY'S FEES

Attorney's fees and costs may be awarded in an action concerning the

administration of a trust per KRS 386B.10-040, which reads:

In a judicial proceeding involving the administration of a
trust, the court, as justice and equity may require, may
award costs and expenses, including reasonable
attorney's fees, to any party, to be paid by another party
or from the trust that is the subject of the controversy.

KRS 386B.10-040 permits the court to award attorney's fees and costs to a party in a judicial proceeding that concerns the administration of a trust. Considering our resolution of this appeal, the district court shall reconsider whether Jonathan is entitled to an award of attorney fees in view of Donald's breach of the duty of loyalty and resulting litigation.

Accordingly, we view any remaining issues raised in this appeal to be moot or without merit.

## SUMMARY

Based upon substantial evidence, the undisputed facts and applicable law, we affirm the circuit court's order that Donald, as trustee, breached the duty of loyalty to Jonathan by selling the Chili's property. As a result, Jonathan is entitled to damages for such breach. Upon remand, the district court shall determine the amount of damages owed to Jonathan pursuant to KRS 386B.10-020(1) and shall reconsider whether to award Jonathan attorney's fees pursuant to KRS 386B.10-040.

Wherefore, we affirm the circuit court's order reversing the district court's Findings of Fact and Conclusions of Law. *See Thomas*, 620 S.W.3d at 589. This case is further remanded to the district court for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Stephen G. Amato
Lexington, Kentucky

BRIEF FOR APPELLEE:

Robert C. "Coley" Stilz, III
Melissa H.P. Palmer
Lexington, Kentucky